851 So.2d 303 (2003)
J.M., The Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 4D02-3832.
District Court of Appeal of Florida, Fourth District.
August 6, 2003.
*304 Denise E. Kistner of Law Offices of Denise E. Kistner, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
SHAHOOD, J.
Based on the facts of this case, we reverse the trial court's order of disposition adjudicating the infant child, C.R., dependent, where it found that the infant, who was absent from the jurisdiction, was at risk of harm with his mother, who herself was a minor and had been adjudicated dependent, but was on runaway status.
In this case, the trial court issued an ex parte order to take into custody, the mother, J.M., and her infant child. The mother, at the time, was a sixteen-year old dependent foster child who ran from her placement with her eight-month old infant child. While the mother had been adjudicated a dependent and placed in the temporary custody of the Department, the infant child, at no time, had been declared a dependent prior to the filing of the instant petition.
The Department filed an affidavit and petition for placement of the infant child in a shelter. The petition alleged that there was probable cause to believe that the infant child had been abused, abandoned or neglected or was in imminent danger of illness or injury as a result of the mother running away from her foster care placement. The Department had received information from the mother's grandmother that the mother and the child had been in the state of Virginia; however, the mother allegedly ran from that unknown location after being told by the grandmother that she was calling the police to pick her up. Thereafter, the mother contacted her Guardian Ad Litem and informed her that she and the baby were fine. Information was then received by Margate police that the mother was attempting to obtain a birth certificate for the child. The petition alleged that the child's safety could not be assured because the mother ran away before preventive services could be implemented. The Department requested that the infant child be placed in Department custody upon being located. A shelter order was entered on May 15, 2002.
The Department then filed a Verified Petition for Dependency. The petition realleged the allegations contained in the shelter petition and claimed that the mother's actions harmed the child and or caused the child's physical, mental or emotional *305 health to be significantly impaired. The Department was unable to ensure the protection of the minor child without judicial intervention and voluntary services were not appropriate for the family because the parents' whereabouts were unknown.
The court conducted an arraignment hearing, but the hearing was reset because the parents were not properly served. The Department was then ordered to diligently search for the parents and the child.
Thereafter, the court conducted another arraignment hearing on the petition for dependency and entered a consent on behalf of the parents by default after a diligent search by the Department. The mother's attorney ad litem was present. The attorney ad litem objected to the adjudication and argued among other things that the Department did not have physical custody of the child; that the Department could not state with certainty that the minor child and the parents were still in the State of Florida; that the only allegation of risk against the mother was that she ran away with the child despite having cared for the child for months; that the adjudication was sought only after the mother ran away; that the mother had no notice of the Department's investigation into her running away or that it was seeking judicial intervention as to the infant; and that the mother's runaway status was not the result of any initiation of judicial intervention concerning the infant child.
Notwithstanding argument by the attorney ad litem, the court, after hearing hearsay evidence presented by the Department as to the mother's alleged pregnancy and that the mother was going house to house because she was unable to procure public assistance due to these proceedings, adjudicated the infant child dependent. The court expressed concern for the infant child and stated that because of the "unknown situation," the child should be declared dependent so that everything was in place and the Department could move quickly if a "bad situation" developed.
A disposition hearing was held pursuant to which the court entered an Order of Disposition reiterating that the minor child was adjudicated dependent based on the allegations set forth in the petition for dependency. The court set forth certain tasks for the parents to perform prior to reunification. The mother signed a reunification case plan in November 2002 when her whereabouts were ascertained.
We hold that under the circumstances of this case, where the Department never had custody of the infant child, and where no notice or opportunity to be heard was ever given to the mother, the trial court did not have jurisdiction over the child to enter its Order of Disposition adjudicating the infant child dependent. Moreover, by entering an order adjudicating the child dependent where both the mother and child were outside the jurisdiction of the court, the mother was deprived of her due process rights.
In addition, we note that even if the court did in fact have jurisdiction over the infant child, the allegations in the petition for dependency and the evidence presented at the hearing were inadequate to support a finding of dependency.
In this case, the mother, who was on runaway status when she left the jurisdiction of the state prior to the filing of the petition, was never in violation of any court order when she left the jurisdiction since the child had never been declared a dependent in this state.
The only allegation supporting neglect by the mother was the fact that she left the state with the child and was on the run. From that, DCF concluded that the *306 child was in imminent risk of harm. In particular, the court held that "[t]hese activities and/or environments threaten harm to the child as defined in Florida Statutes 39.01(30) and/or caused or are likely to cause the child's physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired."
Other than hearsay testimony presented at trial, there was no evidence that the infant child was ever at risk or suffering from neglect. Thus, the court adjudicated the child dependent based on mere allegation with absolutely no evidence to support such claim.
We accordingly reverse the order of disposition entered by the trial court and remand for further proceedings consistent with this opinion.
WARNER, and KLEIN, JJ., concur.